Shaw, C. J.
Two questions are presented in this case. The first is whether the plaintiff has title to the half of the highway, along which the stream in controversy runs; if she has, it being conceded that the brook lies wholly south of the middle of the highway at that place, it must of course for some extent pass wholly through the land of the plaintiff.
The northern boundary of the plaintiff’s land is described *598 in-a deed, from which she derives her title, as “ running northerly seven poles to the county road, and from thence upon the road twenty-two poles to the first mentioned bound.” The ordinary construction of such a deed, to the highway and from thence upon the highway, would carry the land to the middle of the highway. Such is the established presumption, governing the construction of a deed, in the absence of controlling words. Chatham, v. Brainerd, 11 Conn. 60; Champlin v. Pendleton, 13 Conn. 23; Bucknam v. Bucknam, 3 Fairf. 463; 1 U. S. Dig. Boundaries, III.
The only circumstance relied on, to control this presumption, is the fact found in the case, that in measuring the distance from the last named boundary, in the description, to the road, it is in fact seven rods to the southerly side of the road, there indicated by a stone wall, between which and the ■travelled part of the road the brook runs for a little distance, and then turns in a southerly direction, enters the plaintiff’s land, and runs through it to its outlet in a salt water creek. But the court are of opinion, that this fact does not rebut the strong presumption, that boundary on a highway is ad filum vice. The road is a monument, the thread of the road, in legal contemplation, is that monument or abuttal. By a well known rule of construction of deeds and other instruments, calling for localities, measurements will yield to monuments. Suppose this had been northerly to the centre of. the highway, there measuring seven rods, and it in fact measured nine rods, no doubt this would have passed the soil to the centre of the road. Land may no doubt be bounded by the side of a highway, but it must be done in clear and distinct terms, to control the ordinary presumption. Perhaps this point is not very- material to the present case, because it is conceded, that from the highway it runs exclusively through the plaintiff’s land; but as it is made, and as perhaps it. makes the result more clear and satisfactory, we have examined it with the above result.
2. Taking this to be so, the defendants, by excavating an artificial pond or reservoir, on their own land, on the north side of the road, and placing a dam across the brook to raise *599 the water in that reservoir, and thence by a culvert or pipe taking the water from the reservoir, along and across the road and into their own land, and conducting it thence to their mills, from which it is discharged into the salt water below the plaintiff’s land, have effectually diverted a large, portion of the entire volume of the water of the brook from the plaintiff’s land.
This was an unwarrantable and injurious use of a common right to a watercourse, running in its natural channel, through the lands of several different proprietors. The rule of law is well settled, that each of such proprietors has a right to a reasonable and beneficial use of the current as it passes through his own land; but he has no right to divert or corrupt it, so as to prevent the proprietor below him from having and enjoying the same use, for all usual and beneficial purposes. This substantial diversion of the watercourse, therefore, was unwarranted by any right of the defendants, as proprietors above, was an encroachment on the rights of the plaintiff, and prejudicial to her estate. And although the plaintiff has sustained no present damage, because she has had no miff upon it, or otherwise used it for any agricultural or manufacturing purpose, yet such diversion would prevent such beneficial use of it hereafter, and thus impair the value of the estate. It is therefore a case where an action can be maintained to vindicate the plaintiff’s right, and to prevent a loss of it by adverse possession and lapse of time.
Even where it has been considered that a riparian proprietor had authority to make use of the stream for purposes of irrigation, and thus by that use divert a portion of it, it has been held under the condition, that such diversion was, under all circumstances, a reasonable use of the stream, and that the surplus of the water thus used must be returned into its natural channel. These cases carry a strong implication, that a diversion of the entire stream, or of a considerable part of it, is prejudicial to the proprietor below, and not justifiable. Weston v. Alden, 8 Mass. 136; Colburn v. Richards, 13 Mass. 420; Cook v. Hull, 3 Pick. 269; Embrey v. Owen, 6 Welsb Hurlst. & Gord. 353.
*600 3. We have not considered the act of the legislature as having any effect on the rights of the plaintiff. It seems to have been made alio intuitu, and solely as a license to the defendants to make a certain use of the highway, which would otherwise have been a public nuisance.
Judgment for the plaintiff for $1 and costs.